*642 OPINION OF THE COURT
John S. Lockman, J.
Motion by plaintiff for an order (1) pursuant to CPLR 3211 (a) dismissing the defendant’s first, second, and third counterclaims; (2) pursuant to CPLR 3211 (b) dismissing the defendant’s first and second affirmative defenses, a separate and distinct partial defense and setoff, and a second separate and distinct partial defense; and (3) pursuant to CPLR 3212 (a) granting judgment in favor of the plaintiff in the amount of $49,500 is determined as provided herein.
This is an action by the County of Nassau to recover penalties in the sum of $49,500 pursuant to Nassau County Ordinance No. 229-80. The defendant is the developer of a 99-unit condominium project in Woodbury, New York, known as Eagle Chase Condominium. The plaintiff’s complaint alleges, inter alia, that "a model building, containing five units, and a clubhouse had been constructed prior to final approval by the Planning Commission and in violation of Nassau County Ordinance No. 229-1980”. Further, that "units have been offered for sale in violation of Section 1610 of the County Government Law of Nassau County and Nassau County Ordinance No. 229-1980”.
Branch (1) of the plaintiff’s motion is granted. The defendant’s first, second, and third counterclaims are hereby dismissed.
The defendant’s first counterclaim asserts a claim for just compensation under the Fifth Amendment of the US Constitution. This counterclaim alleges that the county and its various agencies refused to process the defendant’s subdivision application "in any manner from on or about March 17, 1987 until at least on or about October 20, 1987”. Further, that this delay "constituted a temporary taking which denied the defendant land owner all use of his property for which the Fifth Amendment of the United States Constitution required just compensation”. The court disagrees.
The record shows that the county and its agencies did not delay the processing of the defendant’s subdivision application pursuant to any law. Thus, a claim for just compensation on the rationale of First Lutheran Church v Los Angeles County (482 US 304) does not lie. The United States Supreme Court distinguished between property "taken” by land use regulation and "normal delays in obtaining building permits, *643 changes in zoning ordinances, variances, and the like.” (First Lutheran Church v Los Angeles County, supra, at 321.)
While it can be argued that the moratorium imposed by the Jericho Water District upon the issuance of certificates of water availability was not foreseeable and that the delay in processing the defendant’s subdivision application directly attributable to the moratorium was not a normal delay, the county’s refusal to process the defendant’s application without a certificate of water availability was in fact normal operating procedure for the county. Stanley Juczack, who identifies himself as "the Director for the Center for Environmental Protection which is a branch of the Nassau County Department of Health”, states that "if the application and supporting documents are not complete * * * the entire package is returned to the project consultant”. He further states that: "Without a letter of water availability and the subsequent approval of the water mains to a subdivision the application package is not considered complete and no further action or technical review is taken.” As to the present case, Mr. Juczack states that the defendant’s application "did not initially contain a certificate of water availability from the Jericho Water District” and "was returned to the project consultant pursuant to the requirement of Public Health Law § 1116 and the normal course of procedure [sic] of this office in processing an application”.
Since Public Health Law § 1116 does not require the return of an incomplete application or even the suspension of processing, the court finds that the defendant’s application was returned pursuant to an administrative policy (i.e., the normal course of procedure). Furthermore, since Mr. Juczack’s statements have not been controverted, the court concludes that the delay in the processing of the defendant’s subdivision application was a normal delay.
Moreover, First Lutheran Church v Los Angeles County (supra) did not change the rule that "[a] 'taking’ can be established only if a permit has been sought and denied” (Matter of Wedinger v Goldberger, 71 NY2d 428, 439, cert denied — US —, 109 S Ct 132). In this case, since the defendant was, in fact, granted all the permits and approvals required, as a matter of law, there has been no "taking”. The court, therefore, concludes that there has not been a compensable taking within the meaning of the Fifth Amendment of the US Constitution. Insofar as the defendant seeks a declaration that the regulatory actions of Nassau County constituted *644 a temporary taking, the court declines to do so for the reasons already stated.
The defendant’s second counterclaim appears to be seeking a declaration that the regulatory actions taken by Nassau County "have been in violation of the County Charter, New York State law, the New York State Constitution, Federal laws and the United States Constitution”. Specifically, it is alleged that: "The refusal to process the subdivision application was arbitrary and capricious and deprived defendant of due process and equal protection under the law in violation of the County Charter, the laws of New York, the New York State Constitution and the United States Constitution”. The court holds, however, that there has been no violation of law. There is nothing in the County Charter, the laws of New York, the New York Constitution, the laws of the United States or the United States Constitution that required the County of Nassau and its agencies to process the defendant’s incomplete application. Nor can such action be considered arbitrary or capricious.
The defendant’s third counterclaim asserts a claim under 42 USC § 1983, albeit no relief appears to be requested. Specifically, it is alleged: "That the actions of the County of Nassau and its various agencies, acting under color of law, interfered with and prevented defendant’s lawful use of its property and deprived the defendant of rights secured to it by the United States Constitution, in violation of 42 U.S.C. Section 1983 and the Fourteenth Amendment to the United States Constitution.” This counterclaim is without merit. As already noted, the County of Nassau did not delay the processing of the defendant’s subdivision application pursuant to any law but, rather, pursuant to administrative policy. Also, as previously held, there is no law which required the County of Nassau to process the defendant’s application without a certificate of water availability.
Branch (2) of the plaintiiFs motion is granted to the extent that the defendant’s first and second affirmative defenses are hereby dismissed. This branch of the motion is, however, denied insofar as it seeks dismissal of the defendant’s separate and distinct partial defense and setoff and the second separate and distinct partial defense.
The defendant’s first affirmative defense challenges the validity of Nassau County Ordinance No. 229-80 and the authority of the Nassau County Planning Commission to *645 impose penalties. This defense is without merit. The validity of Nassau County Ordinance No. 229-80 has already been upheld. (Landmark Colony v Board of Supervisors, 113 AD2d 741.) The Appellate Division, Second Department, held that said ordinance was not preempted by Real Property Law § 334-a or the Condominium Act (Real Property Law art 9-B).
With respect to the authority of the County of Nassau to impose penalties, Real Property Law § 334-a, section 1610 of the County Government Law of Nassau County, and Nassau County Ordinance No. 229-80 furnish the necessary authority. Indeed, Nassau County Ordinance No. 229-80 is alone sufficient. The fact that the Town of Oyster Bay issued some building permits to the defendant did not in any way abrogate the legal requirements upon the defendant to secure the necessary approvals from the County of Nassau and to file the subdivision map. The building permits issued by the Town of Oyster Bay constituted permission from the Town of Oyster Bay, not from the County of Nassau.
The defendant’s second affirmative defense seeks the application of the doctrine of equitable estoppel against the plaintiff to prevent the imposition of any penalty. This defense additionally asserts that the plaintiff "enters this Court with unclean hánds”. Counsel for the defendant contends: "That the failure and refusal of the plaintiff to process the subdivision application of Eagle Chase during the moratorium was wrongful and misleading and plaintiff should be estopped from the enforcement or imposition of any penalty on defendant by reason of its own wrongful, misleading and improper actions.” This contention does not have any relevance to the facts of this case.
The doctrine of equitable estoppel "rests upon the word or deed of one party which is rightfully relied upon by another who, as a result, changes his position to his injury” (57 NY Jur 2d, Estoppel, Ratification, and Waiver, § 13, at 17; Triple Cities Constr. Co. v Maryland Cas. Co., 4 NY2d 443, 448). The court does not perceive how the defendant could have relied upon or been misled by the plaintiff’s delaying the processing of the defendant’s subdivision application. Unless representatives of the County of Nassau expressly gave the defendant permission to commence construction before the necessary approvals were granted and the subdivision map was filed, the court sees no basis for the application of the doctrine of equitable estoppel.
*646 Insofar as the defendant relies upon the issuance of building permits by the Town of Oyster Bay, as already noted, the building permits only constituted permission from the Town of Oyster Bay, not from the County of Nassau. The Town of Oyster Bay is a separate municipality and the County of Nassau is not bound by the town’s actions. Thus, the defendant had no right to rely upon these building permits to commence construction prior to obtaining the necessary approvals from the County of Nassau.
The defendant also relies upon the Nassau County Planning Commission’s approval of its site plans on September 4, 1986 under their referral from the Town of Oyster Bay pursuant to General Municipal Law § 239-m. As with the issuance of the building permits by the Town of Oyster Bay, the defendant had no right to rely upon this preliminary approval to commence construction. The defendant was still obligated to obtain the necessary approvals for its subdivision map and to file said map with the County Clerk. Here, the defendant could not claim that it lacked knowledge of the requirements for obtaining approval for its subdivision map since it applied to the County of Nassau for such approval prior to commencing construction.
The defendant’s reliance upon Landmark Colony v Board of Supervisors (supra) is unsound. That case is distinguishable on the facts. First, unlike the cited case, in the present case, the Nassau County Planning Commission did not notify the Town of Oyster Bay that it had no objection to the issuance of a building permit for the construction of model units. Second, unlike the cited case, in this case, the Nassau County Department of Public Works did not advise the applicant that it had no objection to the issuance by the Town of Oyster Bay of building permits. Third, unlike the cited case where Nassau County Ordinance No. 229-80 was enacted after construction began, in this case, said ordinance was in effect before the approval process commenced. There is simply no basis for the application of the doctrine of equitable estoppel in this case.
Finally, insofar as counsel for the defendant contends that the plaintiff has entered this court with "unclean hands”, the court notes that the clean hands doctrine applies only to equity actions and proceedings. (See, 55 NY Jur 2d, Equity, § 124; Dry Dock Sav. Inst. v Harriman Realty Corp., 150 Misc 860, 861, affd 244 App Div 793.) Since the plaintiff’s cause of action is not equitable in nature, the clean hands doctrine cannot be applied to this case. Moreover, there is no proof *647 whatsoever that the plaintiff delayed the processing of the defendant’s subdivision application for any improper reasons. The plaintiff’s refusal to process the defendant’s incomplete application, standing alone, cannot be considered unconscionable, immoral or inequitable.
Moving on to the defendant’s separate and district partial defense and setoff. This defense has merit. The Nassau County Attorney is holding the defendant’s check, dated October 20, 1987, in the face amount of $2,500.
As to the defendant’s second separate and distinct partial defense, the plaintiff has not made a prima facie showing that this defense should be dismissed. The plaintiff relies upon certain "documentary evidence” annexed as exhibits D, E, F and G to its memorandum of law. It is necessary to examine these exhibits.
Exhibit D is a hearsay memo that mentions only 10 to 15 units. This is consistent with this partial defense. Exhibit E is a newspaper advertisement that does not identify the newspaper (i.e., the name of the newspaper does not appear on the court’s copy of this exhibit) nor does counsel for the plaintiff identify the newspaper. Exhibit F is a double hearsay memo that does not mention any number of units. Lastly, exhibit G is a copy of a brochure for the defendant’s development. However, there is no proof as to where and under what circumstances the plaintiff acquired it. Collectively, these exhibits do not establish that this partial defense is without merit.
With respect to the construction of the model units and the clubhouse, there is no proof of any signs or brochures offered to the public at the premises. The construction of the model units and the clubhouse alone does not constitute advertising. It must be shown that information has actually been communicated to the public or that the public has been notified of the existence of the development. The double hearsay memo is insufficient. A judgment cannot be based upon hearsay alone. (See, Levins v Bucholtz, 2 AD2d 351.)
Branch (3) of the plaintiff’s motion is granted in part and is denied in part. Since the defendant admits in its answer that 16 units "had been transferred, sold, agreed to be sold, offered or advertised for sale, as of the date of [the] Planning Commission approval”, the plaintiff is awarded judgment against the defendant in the sum of $8,000. The penalty is assessed at $500 for each unit. As to the remaining 83 units, the plaintiff has not made a prima facie showing.
*648 No judgment shall be entered until the final determination of this action.
If they have not already done so, all parties are directed to appear for a preliminary conference, Supreme Court Building, lower level, Mineóla, New York, on a date to be scheduled by the Conference Calendar Clerk but in no event more than 60 days after movant serves a copy of this order with notice of entry on all parties and the Conference Calendar Clerk. Movant shall serve as directed above within 15 days from the date of this order.